## Asahel Bellows *et al. versus* Cyrus Lovell.

A refusal of the creditor to sue the principal upon a mere request of the surety, un-accompanied with an offer of indemnity against the costs and charges of the suit, is not a defence at law to a suit against the surety, notwithstanding the principal may afterwards have become insolvent.

So of a refusal, under like circumstances, to prosecute a suit already commenced and in which the creditor has attached property sufficient to satisfy the debt.

The payee of a promissory note made by principal and surety, brings an action against the principal on the note and on another debt, and attaches personal property sufficient to satisfy both demands. The property is left in the possession of the debtor, one B giving his accountable receipt therefor to the attaching officer, and part of it is afterwards attached by other creditors. B then pays the amount of the note, which is indorsed to him at his own risk, and is thereupon withdrawn from the suit, and the residue of the property attached is applied in satisfaction of the payee's judgment upon his other demand. B then sues the surety upon the note. *Held* that the surety is liable, notwithstanding he requested the payee, after his attachment, not to assign the note.

Assumpsit upon a joint and several promissory note made by Joseph Lovell and Cyrus Lovell in February 1824, payable to C. Wheeler or order on demand with interest, and indorsed to the plaintiffs.

The defence rested upon the following facts. On the 5th of April, 1825, Wheeler commenced a suit against Joseph for money had and received, and also for goods sold and delivered, intending to file the note in question in support of the count for money had and received. An attachment was made of divers articles of personal property, sufficient to secure all the claims intended to be covered by the writ. The action was duly entered, and was pending in the Court of Common Pleas, when the note was indorsed to the plaintiffs. The property attached was left in the possession of Joseph, the plaintiffs having given a receipt therefor to W. Eaton, the officer who made the attachment. At this time Joseph's circumstances were doubtful, and the plaintiffs requested Eaton to inform them if he should hear of any thing which might endanger their security. The articles attached continued to be used by Joseph for two or three months after the attachment, when several of his creditors commenced suits against him and attached part of the same property. A part not attached by these creditors was taken into possession by

**308**

the plaintiffs and held by them until Wheeler obtained judgment for his demand exclusive of the note, and was sold to satisfy that judgment. Eaton said that notice was given to the plaintiffs before the second attachment of the property, and that they might have secured a horse and chaise. In this state of things, the plaintiffs being answerable to the officer upon their receipt, and the officer being answerable to Wheeler, the plaintiffs procured money and paid the amount of the note to Wheeler, who indorsed it to them, they taking it at their own risk. The note was then withdrawn from Wheeler's suit, and this action was commenced upon it against Cyrus Lovell, who it was proved was surety for Joseph, for whose debt to Wheeler the note was given.

Before the note was transferred to the plaintiffs, Cyrus requested Wheeler not to transfer it, stating that he had security upon his attachment. Wheeler declined making any promise about it.

Joseph testified, that at the time when the plaintiffs gave their receipt, one of them stated to him, that signing the receipt would discharge Cyrus from the note. But Eaton, who was present and did not hear this declaration, testified that one or both of the plaintiffs mentioned Cyrus as relying upon him. The plaintiffs knew, at the time of giving their receipt, that Cyrus was a surety.

The jury were instructed, that unless the transfer of the note was fraudulently made, with the purpose and intent of releasing the security obtained by the attachment, their verdict must be returned for the plaintiffs ; that if Wheeler's purpose was only to receive the money due to him more speedily than he could get it by prosecuting his action to judgment, the transfer would not be fraudulent on his part ; and that if the only object of the plaintiffs was to secure themselves from loss, the taking of the note and suing Cyrus was not fraudulent on their part.

The jury found for the defendant, and the plaintiffs moved for a new trial because the verdict was against evidence. If the verdict was wrong, a new trial was to be granted ; unless from the facts above stated the Court should be of opinion, that Cyrus, upon the principles of law respecting the relation

Bellows<br>v.<br>Lovell.

309

of principal and surety, ought to be discharged; in which case the plaintiffs were to become nonsuit.

*Merrick* and *A. Denny*, in support of the motion, said that there was no evidence tending to show fraud, and if so, the facts stated were not a defence to the action; that nothing would discharge the surety but the doing of some act, on the part of the creditor, which would prevent the surety from paying the debt and resorting to the principal for indemnity. *Orme* v. *Young*, 1 Holt's N. P. Rep. 84; *Davey* v. *Prender grass*, 5 Barn. & Ald. 187; *Ludlow* v. *Simond*, 2 Caines's Cas. in Err. 16; *Commissioners of Berks* v. *Ross*, 3 Binney, 520; *Rees* v. *Berrington*, 2 Ves. jun. 540; *Leonard* v. *Giddings*, 9 Johns. R. 355; *Lenox* v. *Prout*, 3 Wheaton, 520; *Harrington* v. *Ward*, 9 Mass. R. 251; *Wright* v. *Simpson*, 6 Ves. 734; Fell on Guar. 216, cites Prec. Ch. 178.

*Davis* and *Allen*, for the defendant. In equity, when the debt is due, the surety may compel the creditor to collect it of the principal, and whatever will exonerate the surety in a court of equity, will be a defence in a court of law. *Rees* v. *Berrington*, 2 Ves. jun. 544; *King* v. *Baldwin*, 17 Johns. R. 384; *S. C.* 2 Johns. Ch. R. 554; *People* v. *Jansen*, 7 Johns. R. 332; *Samuell* v. *Haworth*, 3 Meriv. 272. If the creditor parts with a lien or other means of obtaining payment, the surety is discharged. Fell on Guar. 214; *Law* v. *E. I. Co.* 4 Ves. 824. So if he does any other act injurious to the surety; or omits to do an act which it is his duty to perform, whereby the surety is injured. 17 Johns. R. 384; 9 Johns. R. 332; *Pain* v. *Packard*, 13 Johns. R. 174. So collusion to throw the debt upon the surety will discharge him. *Hunt* v. *Bridgham*, 2 Pick. 583. These principles apply to the case at bar. Wheeler had an indefeasible lien on the property attached, and by parting with it he gave up his claim against the surety; and the note having been indorsed after it was due, the plaintiffs stand in Wheeler's place. If the plaintiffs and the defendant are both to be considered as sureties, yet as the plaintiffs have lost the property by letting it remain in the possession of the principal, they ought to suffer, and not the defendant. The question of fraud was put distinctly to the jury, and their verdict cannot be said to be

against evidence on that point. It was their province to judge of the motives of the parties in transferring the note. *Blanchard* v. *Colburn*, 16 Mass. R. 347 ; *Bellows et al.* v. *Lovell*, 4 Pick. 155.

PUTNAM J. drew up the opinion of the Court. If the facts would warrant the inference, that the transfer of the note to the plaintiffs was made *merely* " with the purpose and intent of releasing the security obtained by the attachment," the verdict should stand. But upon a careful examination we think that no such inference can be drawn. The plaintiffs had become sureties to the deputy sheriff for Joseph Lovell. We think the reasonable inference from the evidence is, that the plaintiffs paid the debt, and so obtained a control over the suit, for the purpose of saving themselves from loss on account of their undertaking to the officer. In the absence of express proof of malice or of an intent to defraud the defendant, it does not follow that the prejudice occasioned to the defendant by the accidental consequence of the act done by the plaintiffs for their own security, should be deemed to be fraudulent. The plaintiffs were more vigilant than the defendant. Both stood in the relation of sureties for Joseph Lovell, and neither could have any legal reason to complain of the other for the results of the exercise of more legal diligence to secure himself.

But it is contended that the defendant, " upon the principles of the law respecting the relation of principal and surety, ought to be discharged."

The undertaking of a surety is absolute ; and not conditional, as is the engagement of an indorser. The creditor has his remedy immediately against both promisors or either, upon a joint and several note. Mere delay will not prejudice his claim, unless accompanied by stipulations varying the contract of the principal. *Hunt* v. *Bridgham*, 2 Pick. 581, [2d ed. 585, n. 1 and 3,] and cases there cited.

The surety has been placed upon better grounds in the courts of equity. Those courts, upon the application of a surety after the debt has become due, will decree that the principal shall pay it. *Ranelagh* v. *Hughes*, 1 Vern. 190. And the creditor will be compelled to sue the principal,

**311**

Bellows
*v.*
Lovell.

when the surety apprehends danger from delay. *Hayes* v *Ward*, 4 Johns. Ch. R. 132.[1] *But that proceeding must be upon an offer of indemnity against the consequences of risk, delay, or expense.*

It is however still understood in equity, that the surety is a guarantee, and that it is his business to see that the principal pays the debt. *Wright* v. *Simpson*, 6 Ves. 734. Lord *Eldon* held it to be clear, " that if the surety deposits the money and agrees that the creditor shall be at no expense, he may compel the creditor to prove under a commission of bankruptcy."

We are of opinion that a refusal of the creditor to sue the principal upon a mere request of the surety, unaccompanied with an offer of indemnity against the costs and charges of the suit, is not a defence at law against the suit of the creditor, notwithstanding the principal may have become insolvent afterwards.[2]

A different decision would be the application of a new rule here, which we think unnecessary and inexpedient. There is already a remedy for the surety. Let him pay the debt according to his undertaking, and sue the principal himself,[3] or come in and prosecute the suit pending in the name of the creditor, but at the risk and cost of the surety. The creditor under such circumstances would become a trustee for the surety. *In the matter of M'Kinley*, 1 Johns. Cas. 138 ; *Clason* v. *Morris*, 10 Johns. R. 539. If in the case at bar the request of the defendant to the promisee not to transfer the note, should be considered as equivalent to an original request to sue it, there would still be a fatal omission on the part of the defendant. His request should have been accompanied with an offer of indemnity

[1] See also *King* v. *Baldwin*, 2 Johns. Ch. R. 131; *Taylor* v. *Heriot*, 4 Desaus. 227; *Stump* v. *Rogers*, 1 Ohio R. 533.

[2] See *Crane* v. *Newell*, 2 Pick. (2d ed.) 614, n. 1; *Beardsley* v. *Warner*, 6 Wendell, 610; *Warner* v. *Beardsley*, 8 Wendell, 199; *Manchester Iron Manuf. Co.* v. *Sweeting*, 10 Wendell, 162; *Huffman* v. *Hulbert*, 13 Wendell 376, 377; *Frye* v. *Barker*, 4 Pick. 382; *Davis* v. *Huggins*, 3 N. Hamp R 231 ; *Croughton* v. *Duval*, 3 Call, 69; *Moore* v. *Broussard*, 20 Martin's (Louis.) R. 277; *Pickett* v. *Land*, 2 Bailey, 608; *Andrus* v. *Beall*, 9 Cowen 693.

[3] See *Ingalls* v. *Dennett*, 6 Greenl 79.

against the costs and expenses of the suit. There was no
such offer. The creditor may abandon his suit' against the
principal and resort to the surety for payment. Pothier on
Obligations (by Evans,) 261. If, for example, the promisee
had attached the real estate of the principal, which could
only be taken subject to appraisement, or the title of which
was doubtful, or if there were an attachment upon personal
property, the validity of which was questionable, or if he
could obtain his debt presently in money from any one having
an interest in the matter ; — in such cases we think that the
promisee might fairly disentangle himself from litigation by a
transfer of the note. The creditor in such cases would not
be under any obligation to carry on the suit at his own expense
and risk for the benefit of the surety.

The result is that the verdict must be set aside and a new
trial granted.